McClendon, j.
 

 |2Pefendant, Maximino Cruz Sanchez, was charged by bill of information with operating a vehicle without lawful presence in the United States, a violation of LSA-R.S. 14:100.13. Defendant filed a motion to quash the bill of information, attacking LSA-R.S. 14:100.13. The trial court denied the motion to quash. Defendant withdrew his former plea and entered a plea of guilty as charged, reserving the right to appeal the trial court’s ruling on the mo
 
 *837
 
 tion to quash bill of information pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976).
 
 [1]
 
 The trial court sentenced defendant to thirty days imprisonment in parish jail. The trial court further ordered that defendant be held under Immigration and Naturalization Service (INS) detainer. Defendant now appeals, presenting five assignments of error as to the trial court’s denial of the motion to quash bill of information. For the forthcoming reasons, we affirm the conviction and sentence.
 

 STATEMENT OF FACTS
 

 As defendant entered a guilty plea to the offense as charged in the instant case, the facts were not developed. In accordance with the bill of information, the instant offense took place on March 16, 2009. The factual basis presented by the defense counsel during the
 
 Boykin
 
 hearing is as follows. A police officer approached defendant as he was changing one of the tires on his vehicle. The passenger of defendant’s vehicle indicated that defendant had been driving while intoxicated. The officer further determined that defendant did not have a valid driver’s license and that he was not legally present in the United States.
 

 ASSIGNMENTS OF ERROR
 

 In an outlined argument in support of his assignments of error, defendant denotes the following major challenges to LSA-R.S. 14:100.13: federal preemption, equal protection, vagueness, valid police power, cruel and unusual punishment, and the lack of probable cause.
 

 IsFirst, defendant argues that the trial court erred in denying his motion to quash because LSA-R.S. 14:100.13 is preempted by federal immigration law. Defendant specifically contends that the definitions for the state statute outlined in LSA-R.S. 14:100.12 create a non-federal alien classification scheme. Noting that federal law precludes states from creating their own categories of aliens, defendant argues that LSA-R.S. 14:100.13 creates categories of aliens that are wholly divorced from the categories created by the federal government. Defendant specifically notes that the definitions for alien students and nonresident aliens are new and do not employ or extend federal categories. Defendant argues that LSA-R.S. 14:100.13 does not use federal categories to mirror federal goals and does not rely on federal immigration standards. Defendant also contends that LSA-R.S. 14:100.12 provides definitions that are confusing and irreconcilable with federal definitions. Defendant contends that the categories of aliens that apply to LSA-R.S. 14:100.13 are incompatible with federal definitions.
 

 Further, defendant argues that the statute requires state agents to make determinations of whether an alien may be admitted or removed from the United States and to report suspects to INS. Defendant argues the statute, constitutes an impermissible regulation of immigration, contending that reporting frequently results in the initiation of removal proceedings against undocumented suspects. Defendant further argues that the statute is preempted because the federal government occupies the field of deciding which aliens are required to carry proof of documentation. Defendant contends that the statute imposes much stiffer penalties for the same violation and that the state’s more severe penalties conflict with the federal scheme’s penalties.
 

 Second, defendant argues that LSA-R.S. 14:100.13 violates equal protection in that the requirement that alien students and nonresident aliens carry documenta
 
 *838
 
 tion showing lawful presence in the United States disproportionately affects those aliens covered by the statute and subjects them to severe penalties.
 

 14Third, defendant argues that the statute is poorly drafted and impermissibly vague and unconstitutional in that on its face it offers ño discrete definition of the documentation a nonresident alien is required to carry to avoid a violation of the law. Defendant conténds that the statute provides insufficient notice to the public of the behavior that is criminalized. Correspondingly, defendant argues there is no standard set forth in the statute or any of its cited references by which a trier of fact can determine guilt or innocence. Defendant further contends that in drafting the statute the legislature did not offer guidelines to govern its application by law enforcement.
 

 Fourth, defendant argues that LSA-R.S. 14:100.18 is not a valid exercise of state police powers. He contends that the statute conflicts with the federal plenary immigration power. In arguing that the statute is an invalid exercise of state police powers, defendant concludes that the statute is repugnant to the U.S. Constitution.
 

 Fifth, defendant argues that the statute constitutes a disproportionate punishment, in that it raises a routine traffic violation to a felony that can trigger deportation with a bar from returning to the United States for up to ten years even if defendant has a United States citizen parent, spouse, or child. Defendant argues that this is cruel and unusual punishment that is clearly arbitrary and without rational relationship to the crime.
 

 As to his final argument, defendant contends that through enforcement of LSA-R.S. 14:100.13, local law enforcement authorities are delving into federal immigration matters under the guise of traffic enforcement without training on the applicable standards. Defendant argues that the statute’s failure to offer guidance as to what constitutes documentation demonstrating lawful presence in the United States renders it impossible for the police to apply any standard or make a probable cause determination. Defendant specifies that in his case the arresting officer did not attempt to verify his status in the United States under immigration laws even though he did not confess to being an illegal alien. Defendant further contends that the only indication to justify the arrest and | scharge was his inability to produce a driver’s license. Defendant concludes that the arresting officer did not have probable cause to arrest him for a violation of LSA-R.S. 14:100.13.
 

 In denying the motion to quash the bill of information, the trial court cited this court’s holding in jurisprudence noted below in finding that the federal preemption challenge does not have merit. Finding no violation of the Equal Protection Clause in this case, the trial court noted that the legislative purposes, as set forth in the statute at issue, show a rational basis under state law for distinguishing between the classes of individuals affected. The trial court further concluded that the maximum penalty for the offense does not constitute cruel and unusual punishment.
 

 Preemption/Valid Police Power
 

 Louisiana Revised Statutes 14:100.13 provides:
 

 . A. No alien student or nonresident alien shall operate a motor vehicle in the state without documentation demonstrating that the person is lawfully present in the United States.
 

 B. Upon arrest of a person for operating a vehicle without lawful presence in the United States, law enforcement officials shall seize the driver’s license and immediately surrender such license
 
 *839
 
 to the office of motor vehicles for cancellation and shall, immediately notify the [Immigration and Naturalization Service] of the name and location of the person.
 

 C. Whoever commits the crime of driving without lawful presence in the United States shall be fined not more than one thousand dollars, imprisoned for not more than one year, with or without hard labor, or both.
 

 Defendant cites
 
 State v. Lopez,
 
 05-0685 (La.App. 4 Cir. 12/20/06), 948 So.2d 1121,
 
 writ denied,
 
 07-0110 (La.12/7/07), 969 So.2d 619, in support of his preemption argument. However, ruling that LSA-R.S. 14:100.18 is not invalidated on the basis of federal preemption, this court has previously declined to follow
 
 State v. Lopez
 
 in the following published cases:
 
 State v. Gonzalez-Perez,
 
 07-1813 (La.App. 1 Cir. 2/27/08), 997 So.2d 1,
 
 writ denied,
 
 09-0292 (La.12/18/09), 23 So.3d 930;
 
 State v. Reyes,
 
 07-1811 (La.App. 1 Cir. 2/27/08), 989 So.2d 770,
 
 writ denied,
 
 08-2013 (La.12/18/09), 23 So.3d 929. Subsequent to those cases, in
 
 State v. Ramos,
 
 07-1448 (La.App. 1 Cir. 7/28/08), 993 So.2d 281 (en banc),
 
 writ denied,
 
 08-2103 (La.12/18/09), 23 So.3d 929, this court reaffirmed the holdings in the above cited eases.
 

 The State of Louisiana is vested with the authority to regulate public roads and highways within the state under its police power, provided that the legislation does not prove repugnant to the provisions of the state or national constitutions.
 
 Kaltenbach v. Breaux,
 
 690 F.Supp. 1551, 1553 (W.D.La.1988). We do not find a clear and manifest purpose of Congress to effect a complete ouster of state power to regulate requirements for legal operation of a vehicle on public roads and highways within a state. In accordance with our prior holdings on this issue and as set forth above, LSA-R.S. 14:100.13 is not preempted by federal law and the enforcement of the statute constitutes a valid exercise of this state’s police power.
 

 Racial Profiling/Equal Protection/Probable Cause
 

 According to the uncontested factual basis presented by the defense at the
 
 Boykin
 
 hearing in this matter, defendant was. changing a tire on his véhicle when the police officer approached him. The Equal Protection Clause prohibits race-based selective enforcement of the law only when such enforcement has a discriminatory effect and is motivated by a discriminatory purpose. To show a violation of the Equal Protection Clause, a claimant must prove that the actions involved had a discriminatory effect and were motivated by a discriminatory purpose.
 
 Chavez v. Illinois State Police,
 
 251 F.3d 612, 635-36 (7th Cir.2001). To prove discriminatory effect, the claimants are required to show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that they were treated differently from members of the unprotected class.
 
 Chavez,
 
 251 F.3d at 636. A party may show that he was similarly situated yet treated differently by identifying individuals who received disparate treatment or by using statistics to demonstrate a significant disparity.
 
 Chavez,
 
 251 F.3d at 636. When statistics are introduced, they must address the issue of whether one class is being treated differently than others similarly situated.
 
 Chavez,
 
 251 F.3d at 638. Supreme Court precedent also suggests that minority motorists alleging that a pretextual traffic stop constituted a denial of equal protection must show that similarly situated Caucasian motorists could have been stopped, but were not.
 
 See Chavez,
 
 251 F.3d at 637-41.
 

 
 *840
 
 There is nothing in the record to indicate that the officer blatantly acted with a discriminatory purpose. There was no hearing or evidence in the record that defendant is a member of a protected class who is otherwise similarly situated to members of the unprotected class and that he was treated differently from members of the unprotected class. Defendant has failed to raise an inference of purposeful discrimination or a
 
 prima facie
 
 showing of discrimination. Thus, the record does not support a finding of a violation of the Equal Protection Clause or the Fourth Amendment prohibition of unreasonable seizures.
 

 As noted, defendant also argues on appeal that there was no probable cause for his arrest. Defendant also raised this issue in his motion to quash. However, the question of probable cause for defendant’s pretrial imprisonment is now moot since the defendant has been convicted.
 
 State v. Sweeney,
 
 443 So.2d 522, 531 (La.1983);
 
 State v. Dorsey,
 
 484 So.2d 865, 866 (La.App. 1 Cir.1986). A defendant adversely affected may move to suppress any evidence from use at trial on the ground that it was unconstitutionally obtained. LSA-C.Cr.P. art. 703 A. The record reveals that defendant filed such a motion but did not raise the lack of probable cause for his arrest as a basis for suppression. A new basis for a motion to suppress cannot be raised for the first time on appeal. A defendant seeking review of a motion to suppress on appeal is limited to the grounds articulated at trial.
 
 State v. Peters,
 
 546 So.2d 829, 831 (La. App. 1 Cir.),
 
 writ denied,
 
 552 So.2d 378 (La.1989);
 
 State v. Wright,
 
 441 So.2d 1301, 1303 (La.App. 1 Cir.1983). Moreover, defendant did not seek a hearing or ruling on his motion to suppress or reserve the issue for appellate review prior to pleading guilty.
 
 See Crosby,
 
 338 So.2d at 586;
 
 State v. Ealy,
 
 451 So.2d 1351, 1352 (La. App. 1 Cir.1984). Heneé, probable cause for arrest is not properly before us.
 

 |sVagueness
 

 Attacks on the constitutionality of a statute may be made by two methods. The statute itself can be challenged, or the statute’s application to a particular defendant can be the basis of the attack. Constitutional challenges may be based upon vagueness.
 
 State v. Gamberella,
 
 633 So.2d 595, 601-02 (La.App. 1 Cir.1993),
 
 writ denied,
 
 94-0200 (La.6/24/94), 640 So.2d 1341. In this case, defendant does not attack the statute’s application to his particular conduct, but argues that the statute is unconstitutional on its face. The constitutional guarantee that an accused shall be informed of the nature and cause of the accusation against him requires that penal statutes describe unlawful conduct with sufficient particularity and clarity that ordinary persons of reasonable intelligence are capable of discerning the statute’s meaning and conforming their conduct thereto.
 
 Gamberella,
 
 633 So.2d at 602.
 
 See
 
 U.S. Const. amend. XIV, § 1; LSA-Const. art. I, §§ 2 & 13. In addition, a penal statute must provide adequate standards by which the guilt or innocence of the accused can be determined. In determining the meaning of a statute and hence its constitutionality, penal statutes must be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision. LSA-R.S. 14:3;
 
 Gamberella,
 
 633 So.2d at 602.
 

 Louisiana Revised Statutes 14:100.13 clearly satisfies these requirements under the applicable rules of construction. Under the terms of the statute, the conduct proscribed is unambiguous. The statute requires alien drivers to carry proof of
 
 *841
 
 legal status and the penalty provision imposes punishment based on the failure to do so. These elements are plainly stated in Subsection A of the statute and Subsection C provides the penalty for a violation of the statute. The statute describes the prohibited conduct with sufficient particularity and clarity that ordinary persons of reasonable intelligence are capable of discerning the statute’s meaning and conforming their conduct thereto. Thus, the statute is not impermissibly vague.
 

 | ciCruel and Unusual Punishment
 

 A defendant who has been charged with violating a criminal statute and who is therefore subject to criminal prosecution is “adversely affected” by that statute and may contest the constitutionality of the sentence authorized therein as facially excessive in violation of LSA-Const. art. I, § 20. Louisiana’s Constitution explicitly prohibits excessive sentences. The Louisiana Supreme Court has stated “[t]he deliberate inclusion by the redactors of the Constitution of a prohibition against ‘excessive’ as well as cruel and unusual punishment broadened the duty of this court to review the sentencing aspects of criminal statutes.”
 
 State v. Goode,
 
 380 So.2d 1361, 1363 (La.1980). Not only does our Constitution’s explicit protection against excessive punishment permit us to determine both whether the sentence of the particular offender is excessive, but also whether the range of sentences authorized by a criminal statute is excessive.
 
 See State v. Guajardo,
 
 428 So.2d 468, 472 (La.1983) (citations omitted).
 

 A punishment is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime.
 
 State v. Dorthey,
 
 623 So.2d 1276, 1280 (La.1993). “A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.”
 
 State v. Lobato,
 
 603 So.2d 739, 751 (La.1992). It is a well established principle that the legislature has the unique responsibility to define criminal conduct and to provide for the penalties to be imposed against persons engaged in such conduct.
 
 Dorthey,
 
 623 So.2d at 1278. The penalties provided by the legislature reflect the degree to which the criminal conduct affronts society.
 
 State v. Davis,
 
 94-2332, p. 11 (La.App. 1 Cir. 12/15/95), 666 So.2d 400, 407,
 
 writ denied,
 
 96-0127 (La.4/19/96), 671 So.2d 925. Courts must apply these penalties unless they are found to be unconstitutional.
 
 Dorthey,
 
 623 So.2d at 1278.
 

 We note that LSA-R.S. 14:100.13 C imposes no mandatory minimum prison sentence or fine. The statute requires only that the sentence not exceed one year and the fine not exceed $1,000.00. While defendant notes that the reporting requirement of the statute may trigger deportation, considering the nature of the offense and the punishment and purpose thereof as set forth in LSA-R.S. 14:100.11, we find that the sentencing provision applicable to LSA-R.S. 14:100.13 is not unconstitutionally excessive.
 

 CONCLUSION
 

 In
 
 State v. Griffin,
 
 495 So.2d 1306, 1308 (La.1986), the Louisiana Supreme Court stated:
 

 Statutes are presumed to be valid, and the constitutionality of a statute should be upheld whenever possible. Because a state statute is presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality. The attack will fail if there exists a reasonable relationship between the law and the promotion or protection
 
 *842
 
 of a public good, such as health, safety or welfare. (Citations omitted).
 

 Based on the foregoing analyses, defendant has failed to meet the burden of proving the unconstitutionality of LSA-R.S. 14:100.13. The trial court did not err in denying the motion to quash the bill of information. We find no merit in the assignments of error.
 

 CONVICTION AND SENTENCE AFFIRMED.
 

 [1]
 

 . Defendant also pleaded guilty to DWI as charged in a separate bill of information.